182 N.J. Super. 562 (1982)
442 A.2d 1044
IGP-EAST, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, AND RESORTS INTERNATIONAL HOTEL, INC., INTERVENOR-RESPONDENT,
v.
THE ATTORNEY GENERAL OF THE STATE OF NEW JERSEY; THE DEPARTMENT OF LAW AND PUBLIC SAFETY & C., AND THE DIVISION OF GAMING ENFORCEMENT OF THE STATE OF NEW JERSEY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 11, 1982.
Decided February 1, 1982.
*564 Before Judges MATTHEWS, PRESSLER and PETRELLA.
Lorane L. Posner, Deputy Attorney General, argued the cause for appellants (Irwin I. Kimmelman, Attorney General of New Jersey, attorney; James R. Zazzali, former Attorney General and G. Michael Brown, Assistant Attorney General, Division of Gaming Enforcement, of counsel; Frederic E. Gushin, Deputy Attorney General, Division of Gaming Enforcement, on the brief).
Howard A. Goldberg argued the cause for plaintiff-respondent (Horn, Kaplan, Goldberg & Gorny, attorneys).
John M. Donnelly argued the cause for intervenor-respondent (Sterns, Herbert & Weinroth, attorneys; Joel H. Sterns, of counsel).
The opinion of the court was delivered by MATTHEWS, P.J.A.D.
On July 24, 1981 IGP-East, Inc. filed a petition (supplemented on September 8, 1981) with the Casino Control Commission seeking approval to organize and promote a casino craps tournament pursuant to the Commission's authority under N.J.S.A. 5:12-5. As described in its petitions, the tournament, to be held at Resorts International Hotel Casino in March, would consist of a series of elimination rounds in the casino game of craps. The top six winners would receive cash prizes amounting to a total *565 of $250,000. To participate, each contestant must purchase $750 worth of tournament gaming chips to be used in making bets and would pay a $250 entry fee.
On October 30, 1981 the Division of Gaming Enforcement filed with the Commission a position paper relating to casino tournament games. The Division's position was that though the Commission had the authority under § 5 of the Casino Control Act to approve casino gaming tournaments as a permissible form of casino gaming, the charging of an entry fee turned the otherwise acceptable tournament into a lottery proscribed by N.J.S.A. 2C:37-1 et seq. Notwithstanding the Division's views, on November 4, 1981 the Commission granted IGP's petition.
Subsequently, IGP began to promote the tournament. The Division, however, persisted in the position that such a tournament was an illegal lottery and consequently threatened both IGP and Resorts with criminal prosecution if the tournament were held.
As a result of these threats, on December 21, 1981 IGP sought declaratory and injunctive relief against the Attorney General and the Division in the Law Division. Specifically, IGP requested an order affirming the legality of its tournament and restraining defendants from instituting criminal charges. This relief was granted by Judge Gruccio on December 28, 1981.
We conclude that a tournament involving an authorized casino game by the Casino Control Commission, even if it takes on some indicia of a lottery, is not proscribed by the Code of Criminal Justice.
We read the "Gambling Offenses" chapter of the Criminal Code not to prohibit every gambling scheme which falls within the definition of a lottery. Only those gambling schemes which are "unlawful" are proscribed. The pertinent sections read:
h. "Lottery" means an unlawful gambling scheme in which (a) the players pay or agree to pay something of value for chances, represented and differentiated by numbers or by combinations of numbers or by some other media, one or more of which chances are to be designated the winning ones; and (b) the winning chances are to be determined by a drawing or by some other method *566 based upon the element of chance; and (c) the holders of the winning chances are to receive something of value.
........
k. "Unlawful" means not specifically authorized by law. [N.J.S.A. 2C:87-1; emphasis supplied]
Thus, if a gambling scheme, which would otherwise be considered a lottery, is "specifically authorized by law," promoting or conducting that scheme would not constitute a criminal violation.
The Casino Control Act defines an "authorized gambling game" in N.J.S.A. 5:12-5:
Roulette, baccarat, blackjack, craps, big six wheel, slot machines, and any variations or composites of such games, provided that such variations or composites are found by the commission suitable for casino use after an appropriate test or experimental period under such terms and conditions as the commission may deem appropriate.
Clearly, any of the six games specifically enumerated in this section, as well as any variations thereof which are properly authorized by the Commission, are "gambling schemes" which are "authorized by law." As such, they fall outside of the scope of the Criminal Code.
If the casino craps tournament here proposed was properly determined to be a variation of craps by the Commission, then as an "authorized gambling game" it is not prohibited by N.J.S.A. 2C:37-1 et seq.
Moreover, that this was the intent of the Legislature seems without doubt in light of the provisions of N.J.S.A. 2C:37-9:
Nothing in this chapter shall be construed to prohibit any activity authorized by the "Casino Control Act" (P.L. 1977, c. 110; C. 5:12-1 et seq.), or to supersede any provision of said act.
Since the casino craps tournament here was authorized by the Commission under N.J.S.A. 5:12-5, it is not an illegal gambling scheme under N.J.S.A. 2C:37-1(h).
To a certain extent it is somewhat premature to review the Commission's decision at this time. Pursuant to its power under N.J.S.A. 5:12-5, the Commission merely authorized this craps tournament "on an experimental basis to determine whether or *567 not tournament play should be adopted as a new authorized game." The experimental period is mandated by N.J.S.A. 5:12-5 which requires the Commission to determine whether the variation would be "suitable for casino use." The decision we review here, then, is the Commission's threshold determination that an entry-fee craps tournament is a variation of an authorized game so as to qualify for experimental testing. It is still within the Commission's province, at the conclusion of the experimental period, to find that such a tournament is not "suitable for casino use."
The determination that a craps tournament, which consists of a series of crap games, is a variation of craps, is clearly reasonable and is not challenged by defendants. The fact that an entry fee is charged does not, in our opinion, change the fundamental nature of the underlying game. As discussed above, the Legislature did not intend N.J.S.A. 2C:37-1 et seq. to be a limitation on the Commission's authority under N.J.S.A. 5:12-5. Therefore the Commission's determination that the entry-fee craps tournament was a variation of an authorized game was a reasonable one and will not be disturbed at this time.
Affirmed.